UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Samantha Young, et al.

    v.                                        Case No. 17-cv-016-AJ
                                                Opinion No. 2018 DNH 137
Michael Doucette, et al.


**MEMORANDUM ORDER**

On January 20, 2014, Brian S. Young was killed while helping to install snow chains on the tires of a tractor-trailer truck. Invoking this court's diversity jurisdiction, Young's widow[1] and adult daughter allege state-law claims against the truck's owner, Kelley Trucking, Inc., and its operator, Michael Doucette. Specifically, the plaintiffs bring claims for wrongful death against Doucette (Count 1), vicarious liability and negligent entrustment against Kelley Trucking (Counts 2 and 3), and loss of spousal consortium and parental consortium against both defendants (Counts 4 and 5). The case was assigned to the undersigned magistrate judge, to whose jurisdiction the parties consented. Doc. no. 5.

The court, in its scheduling order, approved the parties' proposal to bifurcate this case into two phases. See doc. no. 12. In the first phase, the parties were to address whether the

---

[1] Young's widow, Samantha Young, brings this action individually, on behalf of Young's estate, and as mother and next friend of her minor child, E.Y.

plaintiffs' claims are barred by New Hampshire Revised Statutes Annotated § 281-A:8.  That statute, as a general matter, bars "any claim based upon negligence by an employer or co-employee for personal injuries arising out of or in the course of employment . . . ."  Gascard v. Franklin Pierce University, 2015 DNH 049, 19-20 (Laplante, J.) (quotation marks omitted) (quoting Karch v. BayBank FSB, 147 N.H. 525, 529 (2002)).

With discovery on this issue now closed, the defendants move for summary judgment, arguing that RSA 281-A:8 bars all five counts.  Doc. no. 14.  The plaintiffs object.  Doc. no. 15.  The court heard oral argument in February 2018.  For the reasons that follow, the court denies the defendants' motion.

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016).  "An issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case."  Xiaoyan Tang, 821 F.3d at 215 (internal quotation marks and citations omitted).  At the summary judgment stage, the court "view[s] the facts in the light most favorable to the non-moving party" and "draw[s] all

2

reasonable inferences in the nonmovant's favor . . . ." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016) (citation and quotation marks omitted). The court will not, however, credit "conclusory allegations, improbable inferences, and unsupported speculation." Fanning v. Fed. Trade Comm'n, 821 F.3d 164, 170 (1st Cir. 2016) (citation and quotation marks omitted) cert. denied, 137 S. Ct. 627 (2017).

"A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016). Once the moving party makes the required showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Id. (citation omitted). "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'" Id. (citations omitted). The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment." Id.

## II. BACKGROUND

There are two corporate entities relevant to the present dispute: Kelley Trucking and Kel-Log, Inc. Michael P. Kelley is the sole owner of both companies. See doc. no. 14-2 ¶ 1. Kel-

Log harvests and sells raw forest products.  Id. ¶ 2.  Kelley Trucking provides trucking and delivery services.  See id. ¶ 3; doc. no. 15-3 at 29-30.  Kelley Trucking is a defendant in this action; Michael Kelley and Kel-Log are not.

At the time Michael Kelley first incorporated Kel-Log, workers' compensation rules did not allow a company to rate lumbermen and truck drivers as different classifications under the same policy.  Doc. no. 14-2 ¶ 4.  Michael Kelley accordingly decided to incorporate Kelley Trucking separately, so that his truck drivers could be classified at a lower rate.  Id. ¶ 5. Though these rules have since changed, Michael Kelley has not consolidated or merged the two companies.  See doc. no. 15-3 at 22-23.  The companies do share the same business location, utilities, administrative staff, retirement plan, safety handbook, and health and workers' compensation insurance policies.  See doc. no. 14-2 ¶¶ 6, 7, 8, 9, 10, 14, 15.  At the same time, they have separate employer identification numbers, own separate equipment and machinery, transact at arm's length, hold separate bank accounts without commingling funds, and maintain separate financial statements, bookkeeping practices, accounting and payroll records, and employment structures.  See doc. no. 15-3 at 19, 27, 33, 34, 35, 39, 53, 54.  The companies also separately pay rent for their office spaces.  Id. at 35.

In January 2014, Brian Young was operating a feller buncher — a machine that mechanically fells trees — at a work site in Grafton, Maine.  Doc. no. 14-2 ¶ 19; doc. no. 20 at 3.  When Young completed this work, Michael Kelley asked that he and Michael Doucette move the feller buncher to a work site in Errol, New Hampshire.  Doc. no. 14-2 ¶ 20.  Michael Kelley directed that Doucette move the feller buncher using a tractor-trailer truck owned by Kelley Trucking.  Doc. no. 20 at 3. Doucette drove the truck, and Young followed Doucette in his personal vehicle.  Doc. no. 16 at 2.

As they neared their destination, Young was killed while helping Doucette install snow chains on the tires of the tractor-trailer truck.  Doc. no. 15-3 at 50; doc. no. 16 at 3; doc. no. 18 at 1.  Michael Kelley had previously trained Doucette on the safe installation of winter chains.  Doc. no. 15-3 at 51-52.  Michael Kelley provides this training to all Kelley Trucking employees.  Doc. no. 15-3 at 50-5.  Both Young and Doucette were W-2 employees of Kel-Log when the accident occurred.  Doc. no. 14-2 ¶¶ 11, 12.

The plaintiffs recovered workers' compensation benefits under Kel-Log's workers' compensation policy.  Doc. no. 14-2 ¶ 23.  They bring this action against Doucette and Kelley Trucking, alleging negligence.

5

## III. DISCUSSION

At the outset it is worth noting three principles of law on which the parties agree.  First, the parties agree that RSA 281-A:8 generally bars an injured employee from bringing a negligence action against his employer or co-employee for an injury that is covered by his employer's workers' compensation insurance.  See N.H. Rev. Stat. Ann. § 281-A:8, I.  Next, the parties agree that this bar typically extends to anyone who may recover damages on that injured employee's behalf, including an employee's widow and children.  See id. § 281-A:8, II.  Finally, the parties agree that if two corporations are in fact alter egos as a matter of law, RSA 281-A:8's protections generally extend to both corporations.  See Leeman v. Boylan, 134 N.H. 230, 233–34 (1991).

The defendants contend that when applied to the facts in the record, these principles entitle them to summary judgment.  Though raised in a different order in the briefing, the defendants' arguments are twofold.  First, the defendants contend that RSA 281-A:8 bars all of the plaintiffs' claims because the undisputed facts in the record demonstrate that Kelley Trucking and Kel-Log were alter egos at the time Young was killed.  Alternatively, the defendants contend that RSA 281-A:8 precludes the plaintiffs' claims, as Young and Doucette were both W-2 employees of Kel-Log on the day in question.

The plaintiffs dispute both contentions. As to the first, the plaintiffs counter that there is ample evidence that Kelley Trucking and Kel-Log were separate corporate entities at the time of the accident for the alter-ego question to be put to a jury.[2] Similarly, the plaintiffs contend that there is a genuine dispute in the record as to whether Doucette was a borrowed servant of Kelley Trucking on the day in question, and therefore not a co-employee of Young at that time. For these reasons, the plaintiffs argue that summary judgment is inappropriate in this case.

**A. Alter Ego**

As noted above, the parties agree, and it is well-established under New Hampshire law, that entities that are alter egos of one another may share employer immunity under RSA 281-A:8. See Leeman, 134 N.H. at 233-34; Tanguay v. Marston, 127 N.H. 572, 576 (1986). There are few decisions, however, addressing the specific factors a court should consider when

---

[2] In their objection, the plaintiffs request that the court enter summary judgment in their favor on this issue. See doc. no. 15-1 at 13. Per the Local Rules for this District, "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing." See LR 7.1(a)(1); see also Jan. 9, 2018 Notice of ECF Filing Error (citing this rule and noting that the plaintiffs must file a separate motion for summary judgment). As the plaintiffs have not filed a separate motion for summary judgment, the court declines to reach this request.

7

determining whether two corporations are alter egos for workers' compensation purposes.³  The parties accordingly turn to Section 112.01 of Larson's Workers' Compensation Law for guidance.  See doc. no. 14-1 at 10; doc. no. 15-1 at 8.  As both parties rely on that section, and there does not appear to be any contrary controlling authority, the court will do the same.⁴

"Generally, common ownership, identity of management, and the presence of a common insurer are not enough to create identity between [corporations] for [workers'] compensation purposes."  6 Larson's Workers' Compensation Law, § 112.01 at 112-3 (2004).  "Probably the most significant factor is actual control, and if [a corporation] is in practice not only

---

³ New Hampshire courts have primarily addressed the alter-ego doctrine in the context of corporate veil-piercing.  Those cases are not particularly helpful, however, as they predominantly focus on whether the corporate identity has been used "to promote an injustice or fraud upon the plaintiff . . . ."  Mbahaba v. Morgan, 163 N.H. 561, 568 (2012) (citation omitted).  Unsurprisingly, the defendants make no such suggestion here.

⁴ Section 112.01 focuses in large part on a parent-subsidiary relationship.  The plaintiffs assert that Kel-Log and Kelley Trucking do not share such a relationship, and argue that this is further reason to reject the defendants' alter-ego argument.  At the hearing, the defendants suggested that Kelley Trucking is in fact a subsidiary of Kel-Log.  The court need not resolve this issue, because even assuming Kelley Trucking is Kel-Log's subsidiary, the court cannot conclude that they are alter egos as a matter of law for the reasons stated infra.  The court accordingly leaves for another day how Kelley Trucking and Kel-Log are affiliated, and what impact (if any) this has on the alter-ego analysis.

completely owned but completely controlled by [another corporation], identity may well be found and immunity conferred." Id. "Conversely, a showing of absence of control is perhaps the most effective single way to disprove the unity of [corporations]." Id. at 112-4.

In arguing that Kelley Trucking and Kel-Log are alter egos, the defendants unsurprisingly focus on what both companies have in common. The defendants emphasize that Michael Kelley owns both companies and that both share the same business location, utilities, administrative staff, retirement plan, safety handbook, and health and worker's compensation insurance policies. In the defendants' view, these undisputed facts are sufficient for the court to rule now that Kelley Trucking and Kel-Log are alter egos as a matter of law.

In response, the plaintiffs point to evidence that they contend demonstrates that Kel-Log and Kelley Trucking are distinct corporate entities. The plaintiffs note that Kel-Log and Kelley Trucking: have separate employer identification numbers; own separate equipment and machinery; transact at arm's length; maintain separate bank accounts without commingling funds; maintain separate financial statements, bookkeeping practices, accounting and payroll records, and employment structures; and separately pay rent for their office spaces. The plaintiffs also note that Michael Kelley initially

established Kelley Trucking and Kel-Log as separate corporations in order to secure lower workers' compensation rates, and continued to maintain the companies separately at the time of the accident. In light of this evidence, the plaintiffs contend that the alter-ego question should be put to the jury.

The plaintiffs have the stronger argument at this juncture. The competing evidence in the record, when taken in its totality, fails to demonstrate that Kel-Log has the requisite level of control over Kelley Trucking for the court to hold that they are alter egos as a matter of law. This question must therefore be put to a jury. See [Tanguay, 127 N.H. at 576](Tanguay, 127 N.H. at 576) (noting that the alter ego determination "is a question for the jury, unless the evidence would support only one finding as a matter of law"). The court accordingly denies the defendants' motion to the extent it is based on an alter-ego theory.

B.   **Borrowed Servant**

The defendants contend that RSA 281-A:8 bars the plaintiffs' claims regardless of whether Kelley Trucking and Kel-Log are alter egos because Young and Doucette were both W-2 employees of Kel-Log on the day of the accident. Because the plaintiffs do not dispute this fact, they bear the burden of demonstrating that their claims nonetheless survive summary judgment. See [Flovac, 817 F.3d at 853](Flovac, 817 F.3d at 853). The plaintiffs attempt

to do so by arguing that there is evidence in the record demonstrating that Doucette was a borrowed servant of Kelley Trucking, and thus not Young's co-employee, when Young was killed. The defendants respond that Doucette was not a borrowed servant of Kelley Trucking as a matter of law.

There are two lines of New Hampshire cases that potentially inform the court's analysis. The first, which the plaintiffs' rely upon, addresses when one employer (typically referred to as a "special employer") can be held liable for the conduct of an employee borrowed from another employer. See Wilson v. Nooter Corp., 475 F.2d 497 (1975); Continental Ins. Co. v. N.H. Ins. Co., 120 N.H. 713 (1980); Currier v. Abbott, 104 N.H. 299 (1962). Under this line of cases, the "fundamental test" for determining if an employee is a borrowed servant is whether the special employer "exercised the right of control over the performance" of the work in question. See Wilson, 475 F.2d at 500-501 (citing Currier, 104 N.H. at 304). See id. (citing Currier 104 N.H. at 304). There are various factors relevant to this inquiry, see Currier, 104 N.H. at 303-05, and it is typically up to a jury "to weigh the[se] factors and determine which employer exercised the right to control," see Wilson, 475 F.2d at 501; see also Indemnity Ins. Co. of N. Am. v. Cannon, 94 N.H. 319, 221 (1947) (noting that the borrowed-servant question

is "a question of fact . . . upon which the finding of the Trial Court cannot be disturbed if there is evidence to sustain it").

The other line of cases, not cited by either side, addresses whether the employee of one employer is a borrowed servant of a special employer such that he falls under the special employer's workers' compensation policy and is therefore barred by RSA 281-A:8 from suing the special employer or its employees for injuries covered by that policy. See Appeal of Longchamps Elec., Inc., 137 N.H. 731 (1993); LaVallie v. Simplex Wire and Cable Co., 135 N.H. 692 (1992); see also 9 Richard B. McNamara, New Hampshire Practice: Personal Injury — Tort and Insurance Practice § 9.35 (4th ed. 2015). For the purposes of this analysis, the New Hampshire Supreme Court applies the definition of "servant" supplied in Section 220 of the Second Restatement of Agency. See LaVallie, 135 N.H. at 695-96. Under that section, "a servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Restatement (Second) of Agency § 220(1). Analyzing this issue requires consideration of a non-exhaustive list of ten factors. See id. § 220(2); see also LaVallie, 135 N.H. at 695-96 (applying these factors, as spelled out in a New Hampshire Department of Labor regulation). Whether an employee is a borrowed servant under

these factors "depends on the facts of the case."  Petition of City Cab of Manchester, Inc., 139 N.H. 220, 221 (1994)

At the outset, it is not clear to the court that these two lines of cases are analytically distinct.  Both lines of cases cite the same Restatement sections, and, as a result, address many of the same factors.  Compare LaVallie, 135 N.H at 695-96 with Currier, 104 N.H. at 303-05.  That said, it is unclear whether this is because both lines of cases apply the same analysis or because the first line of cases approvingly cites Restatement Section 227, comment c, which states that "[m]any of the factors stated in Section 220 which determine that a person is a servant are also useful in determining whether the lent servant has come the servant of the borrowing employer."  Moreover, beyond one parenthetical citation in a string cite, see LaVallie, 135 N.H. at 696 (citing Currier, 104 N.H. at 303), none of the above cases cites to, let alone relies upon, a decision from the other line of cases.  In light of this, the court cannot say with certainty whether these lines of precedents reflect related but ultimately distinct inquiries, or two versions of the same analysis.[5]

---

[5] Even assuming these lines of cases are analytically distinct, neither neatly applies to the present circumstances. On the one hand, the plaintiffs invoke the borrowed-servant doctrine in an attempt to hold Kelley Trucking liable for Doucette's conduct.  Yet the plaintiffs do so at least in part for strategic purposes, as there is no dispute that RSA 281-A:8

The court need not resolve this issue now. As the parties' papers and arguments only address the first line of cases, the court assumes without deciding that those cases control. Thus, for the defendants to be entitled to summary judgment, the record must demonstrate that Kel-Log exercised sufficient control over Doucette's performance on the day in question as a matter of law.

The plaintiffs marshal sufficient evidence for this question to be put to a jury. In their objection to the motion for summary judgment, the plaintiffs point to record evidence demonstrating or supporting a reasonable inference that: (1) Michael Kelley owns and operates both Kelley Trucking and Kel-Log; (2) Kelley Trucking and Kel-Log were incorporated to serve distinct purposes; (3) Kelley Trucking was incorporated for the purpose of trucking and delivery; (4) Michael Kelley trains Kelley Trucking employees on how to install winter tires on Kelley Trucking vehicles; (5) Michael Kelley recalls giving Doucette that training; (6) Michael Kelley directed Doucette to transport the fell buncher on the day in question; and (7) Michael Kelley directed that Doucette do so using a Kelley Trucking tractor-trailer truck. See doc. no. 15-1 at 3-5, 14-

---

would bar their claims if Doucette was a Kel-Log employee at the time of the accident.

18.[6]  When viewed in the light most favorable to the plaintiffs, these facts support a reasonable inference that Kelley Trucking exercised some measure of control over Doucette at the time of the accident.  Whether this control was sufficient, in light of the relevant factors, for Doucette to be a borrowed servant of Kelley Trucking is a quintessential jury question.[7]  See Wilson, 475 F.2d at 501.

**IV.  CONCLUSION**

For the reasons set forth above, the court **denies** the defendants' motion for summary judgment (doc. no. 14).  The Clerk's Office shall schedule a case-management conference at which the court will establish a schedule for the merits phase

---

[6] The plaintiffs cite additional favorable evidence in their surreply.  See, e.g., doc. no. 28 at 2-3.  The defendants argue that the court should not consider this evidence, as it was not properly cited in the plaintiffs' objection.  As the evidence actually cited in the objection is sufficient to defeat summary judgment, the court need not, and does not, consider this additional evidence now.

[7] The defendants contend that that the plaintiffs have it backwards, and that Kelley Trucking in fact lent Kel-Log the tractor-trailer truck on the day in question.  Thus, according to the defendants, Doucette remained a Kel-Log employee when the accident occurred.  While there is certainly evidence in the record to support this conclusion, it is not the *only* reasonable conclusion that can be drawn from the evidence.  As such, summary judgment is inappropriate.

of this litigation.  The parties shall submit a proposed discovery plan at least five days prior to this conference.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

July 3, 2018

cc: Sandra L. Cabrera, Esq.
    Philip R. Waystack, Jr., Esq.
    Doreen F. Connor, Esq.